This is in conformity with Matter of the Estate of Sherwell, 125 N. Y. 376; opinion written by Judge Gray, in which all concurred. Matter of Corbett, 171 N. Y. 516; Matter of Hoffman, 143 id. 327.

Accordingly, I hold that the property passing to Mary deTamble, Joseph Mason and Leo Mason, children of the decedent, of full age, from the estate of their deceased mother under her will in excess of $500 each, is taxable at the full valuation thereof at the rate of one per cent. The other children being adults, and the amount received by them being not more than $500 in value, the property passing to them is not taxable. The legacy of $100 left to the executors in trust for the payment of masses is not taxable.

Let an order be entered according to the terms of this decision, without costs to either party as against the other.

Decreed accordingly.

---

JOHN W. DAVIN, JR., Respondent, *v.* CITY OF SYRACUSE, Appellant.

(County Court, Onondaga County, October, 1910.)

Damages — Liquidated damages — When contract construed as providing for liquidated damages.
Municipal corporations — Contracts — Forfeiture of deposit made by bidder.

Where a municipal corporation advertised for sealed proposals for laying a line of water pipe and that no bid would be received unless accompanied by a certified check or draft payable to the order of the city treasurer for five per cent. of the total amount of the bid, and a bid was duly made accompanied by the required check and the contract was awarded to the bidder but the bidder would not enter into the contract and by reason thereof the municipal board of contract declared the deposit forfeited and contracted for the work with a higher bidder, the former bidder cannot thereafter recover the deposit represented by his check from the city.

Under such circumstances, the deposit should be regarded as made under a contract liquidating damages for a breach on the

part of the bidder at the amount of the deposit; and, in an action to recover the deposit, it is not necessary for the municipality to prove actual damages, but substantial damages will be presumed in the absence of evidence to the contrary.

THIS is an appeal from a judgment of the Municipal Court of the city of Syracuse in favor of the plaintiff against the city of Syracuse, in the sum of $949.50, damages, besides costs.

William Rubin, Assistant Corporation Counsel, for appellant.

Goodelle, Andrews & Harding (William F. Harding, of counsel), for respondent.

Ross, J.   On June 29, 1909, the board of contract and supply of the city of Syracuse advertised for sealed proposals for laying a pipe line across the city, connecting from the standpipe to University Hill, in accordance with plans and specifications on file in the office of the bureau of water.

The advertisement for sealed proposals was in form as follows:

" OFFICE OF THE BOARD OF CONTRACT AND SUPPLY,

" SYRACUSE, NEW YORK, *June* 29, 1909.

" Sealed proposals will be received at the office of the Board of Contract and Supply until 1:30 p. m. Tuesday, July 6, 1909, for laying a line across the city, connected from the standpipe to University Hill, in accordance with the plans and specifications on file in the office of the Bureau of Water. A certified check for 5% of the total amount of each proposal, payable to the order of J. D. Stemmler, City Treasurer, to be forfeited upon failure to enter into contract within five days after notice of award from the Secretary of this Board, must accompany each proposal.

" FREDERICK T. PIERSON, *Secretary.*"

The board of contract and supply submitted to the bidders, together with the plans and specifications for the work for which bids were received, a statement entitled " Infor-

mation for Bidders," which contained, with other matters, the following: " No bid will be received and deposited unless accompanied by a certified check upon a National or State Bank in Syracuse, N. Y., or by a New York Draft drawn and made payable to the order of the City Treasurer for 5 per cent. of the total amount of the bid.

"All such deposits, except that made by the bidder to whom the contract shall be awarded, will be returned to the person or persons making the same within three days after the decision as to who shall receive the contract.

" If the bidder to whom the contract shall have been awarded shall refuse or neglect, within ten days after due notice that the contract has been awarded to him, to execute the same and furnish the security required, the amount of the deposit made by him shall be forfeited to, and retained by, the City of Syracuse as the liquidated damages and not as a penalty for such neglect or refusal, and shall be paid into the funds of said city for his default; but if the said bidder to whom the contract is awarded shall execute the contract and furnish the said security within the time aforesaid, the amount of his deposit will be returned to him."

Thereafter the plaintiff filed in the office of the board of contract and supply a bid to perform the work heretofore mentioned, the amount of said bid being $16,688. There were other bids submitted. The plaintiff at the time of submitting his bid also deposited with the secretary of the board of contract and supply his check for $900, the amount of which has been received by the city of Syracuse; and to recover said sum is the object of this action.

On July 6, 1909, the board of contract and supply passed a resolution authorizing the secretary of said board to enter into a contract with John W. Davin, Jr. (the plaintiff) for laying the pipe in question in accordance with his proposals submitted July 6, 1909, he being the lowest bidder. The plaintiff refused to enter into the contract in question, although notified that the contract had been awarded to him, and thereafter, on July 19, 1909, the board of contract and supply passed a resolution reciting that the plaintiff had refused to execute or carry out the contract in question which

had been awarded to him by said board of contract and supply, which said resolution further provided: "*Resolved,* that the certified check of John W. Davin, Jr., deposited as required to secure the entering into of said contract, on his part, which is in the sum of $900.00, be, and the same hereby is forfeited to the City of Syracuse and all other bids rejected."

On July 20, 1909, the board of contract and supply advertised for proposals to lay a line of pipe connecting the standpipe with University Hill, in accordance with the plans and specifications on file in the office of the bureau of water. While the purpose was the same as in the first plans and specifications, the details were materially different, following to some extent a new route and varying materially from the plans and specifications submitted to the public on June sixth. The board of contract and supply received sealed proposals for performing the work called for in the notice of July twentieth, and a contract was let at a price greater than that at which the plaintiff offered to perform the work specified in the original notice of June sixth.

Thereafter and on November 22, 1909, the common council of the city of Syracuse passed a resolution, which was in due course approved by the mayor, in substance authorizing that the amount of the check of $900 be refunded to John W. Davin, Jr., and asking that the comptroller be directed to draw a warrant for said amount, and directing the treasurer of the city of Syracuse to cash the same and to charge the account thereof to the fund for miscellaneous receipts. The comptroller of the city of Syracuse refused to draw a warrant payable to the order of the said John W. Davin, Jr., pursuant to the resolution of the common council; and the plaintiff has not received from the city of Syracuse the amount of said check.

What are the terms of the contract I am required to construe? The city of Syracuse, through its accredited agent, the board of contract and supply, advertised to the public for bids to perform an important public work and announced in such public notice that a deposit of five per

cent. of the amount bid must accompany such bid "to be forfeited upon failure to enter into contract within five days after notice of award." When the plaintiff examined the specifications, he found this provision so amplified that if he failed " to execute the same and furnish the security required, the amount of the deposit made by him shall be forfeited to and retained by the City of Syracuse as the liquidated damages and not as a penalty for such neglect or refusal;" and thereafter he submitted his bid and made the required deposit, without which his bid would not have been considered. There is no ambiguity thus far, or any doubt as to the precise meaning of the language employed.

The plaintiff submitted his bid, acquiescing apparently in the interpretation which the city put upon the contract. In such bid he stated, " That he has examined the form of contract and specifications approved by the Corporation Counsel and drawings therein referred to and also the premises on which the work is to be done and that by personal examination of said premises and by other means he is satisfied as to the nature of the work to be done, and he proposes and agrees, if this proposal be accepted, that he will contract in the form so approved to perform all the work mentioned in said approved form and contract and the specifications. * * *." So that we have a case of a party to a contract concededly violating its provisions and invoking the aid of the courts in such violation, an aid which necessitates giving to plain language a meaning against the apparent intention of the parties. Such a forced construction is sometimes given by the courts when the amount stipulated as liquidated damages is out of all proportion to the probable loss, in fact is so excessive as to " shock the moral sense."

The agreement must be construed in the light of the surrounding circumstances at the time it was made and not in the light of subsequent events. Dunn v. Morgenthau, 73 App. Div. 147; Curtis v. Van Bergh, 161 N. Y. 47.

The following are the circumstances under which this contract was made. It was an important enterprise, requiring formal and successive steps and formal action by the authorized authorities of the municipality, and required laborious

details of elaboration and preparation by the city engineer. All these legal requirements were in the interest of the public, in this case of no less importance than to supply a considerable area of the city with a sufficient supply of water, involving the safety of that section from the ravages of fire and affecting the lives of those living within the territory to be benefited. Under the circumstances, it was absolutely essential to the transaction of business of the character in question that the bidder should act in good faith toward the city and not bid simply as an experiment, causing unavoidable delay and expense if a readvertisement became necessary. It should be remembered that the plaintiff was given ample time and opportunity for examination, both of the premises where the work was to be performed and the specifications, which he says in his bid he made; and that this is not a case of an attempted performance and a forfeiture because of delay or by reason of the non-performance of some detail of the work, but a bald refusal to abide by the terms of his agreement.

The test that a provision is to be deemed liquidated damages when the actual damages "Are in their nature uncertain and unascertainable with exactness and may be dependent upon extrinsic considerations and circumstances and the amount is not on the face of the contract out of all proportion to the probable loss" (Curtis v. Van Bergh, 161 N. Y. 32) means from the view point of the parties at the time the contract was made and not in the light of subsequent events. At the time this agreement was made, how could the parties have ascertained with exactness what the damages to the city would be in the event of the plaintiff's failure to carry out the terms of his bid? Assuming that the plaintiff's contention that the city should have let the contract to the next highest bidder is correct, how could it have been known at the time this contract was made what would be the amount of the next highest bid? It might be for a sum slightly more in amount than the plaintiff bid, so that the five per cent. deposited by the plaintiff would more than compensate the city, or it might be a sum in excess of the plaintiff's bid so as to render such deposit inadequate. Or,

there might be no other bid.   In other words, the parties were in precisely that position of uncertainty as to what damages would arise to render such a stipulation for liquidated damages peculiarly appropriate.

The claim of the plaintiff is, in brief, that the defendant must show that it has sustained actual damages; and to emphasize this claim insists that the defendant can, upon the plaintiff's failure to enter into the contract in question, resort to only one of two courses of procedure, as a condition precedent to maintaining an action against the plaintiff — either immediately to let the contract to the next highest bidder, or to readvertise the precise work which the plaintiff had agreed to perform.

The question here is not what the defendant ought to have done to enforce its contractual rights against the plaintiff, but what the plaintiff agreed to do.   At the risk of digressing from the issue I suggest that, if the plaintiff's bid chanced to be the only one, the defendant would not have one of the two avenues of escape suggested by the plaintiff, to-wit, to relet to the next highest bidder; and to avail itself of the second condition insisted upon by the plaintiff, i. e., to readvertise, the defendant would have to repeat precisely the conditions and terms of the first bid, regardless of possibly changed conditions and regardless of conditions which might dispense with the subject-matter of the contract. Suppose, pending a readvertisement, that it was discovered that the cement specified in the first bid was worthless; yet to lay a foundation to enforce plaintiff's agreement, according to the theory of the plaintiff, defendant must persist in the use of the cement which has been found to be worthless.   The construction insisted upon by the plaintiff would also, in the event of a readvertisement which resulted in procuring no bids, close this avenue to the defendant, and would entirely prevent defendant's performing the work or any part of it, and would prevent any change whatever in the specifications, however necessary, regardless of the small proportion such change might bear to the entire contract.

It is competent for the parties to a contract to agree as to the amount of damages to be paid upon a breach, instead

of leaving the amount to be ascertained by the court and jury. This agreement will not be interfered with unless the amount is " so grossly disproportionate to the actual injury that a man would start at the mere mention of it." Clement v. Cash, 21 N. Y. 253–256, per Wright, J. " So, also, I think where the language employed in that part of the instrument ascertaining the amount of the damages is clear and plainly indicative of an intention to fix a definite sum to be paid by the party failing to perform, and negatives all inferences of an intent to name the sum as a penalty, the courts are not authorized, by construction, to make a new contract for the parties or unmake the one made by them, and hold, from the nature and circumstances of the case, that the parties intended something wholly different from what they have expressed."

The plaintiff contends that the agreement of the defendant to pay the amount of his deposit as liquidated damages in the event of his failure to enter into the contract must be construed as a penalty, unless the plaintiff establishes by evidence the various items of damages. This claim is disposed of effectually by the case of Little v. Banks, 85 N. Y. 258. The defendant contracted with the city of New York to keep on sale, at certain places indicated, volumes of the New York State Reports and for every failure to perform this agreement to forfeit and pay a fine of $100 to the person or persons so aggrieved thereby, not as a penalty but as liquidated damages. The plaintiff brought action to recover for six penalties. On page 265, Mr. Judge Miller stated for the court: " The counsel for the defendant also insists that, in order to establish a cause of action in favor of a party, some injury must be sustained as a matter of fact, and proof must be given to show that such injury has been done. We think that direct evidence was not required, and, from the fact of a violation of the contract, it is to be presumed that the party sustained a loss, either by an absolute failure to sell to his customers, because he could not obtain the reports, or by being compelled to seek elsewhere for the same books, and perhaps to pay a higher price, if possibly he could thus procure them. In

cases where liquidated damages are fixed, and are not to be regarded as a penalty where there is a failure to perform a material part of the contract, the presumption of law is, that damages were sustained, and the party thus injured is not compelled to establish by evidence the various items of damage as in other cases." Clement v. Cash, 21 N. Y. 259; Shubert v. Sondthein, 138 App. Div. 800. It seems to me that this presumption has greater force in a case like the one under consideration when it appears that no one else would undertake the contract at the price bid by the plaintiff. The claim that the action of the common council, authorizing the return of the plaintiff's check, gives him a right of action, is only mentioned to indicate that it was not overlooked.

The case of McCann v. City of Albany, 158 N. Y. 634, cited by the learned counsel for the plaintiff, is distinguishable. In that case the claim was for liquidated damages of fifty dollars a day for a claimed delay of 138 days in constructing a sewer. The work of construction proper was fully completed at the expiration of the time allowed by the city. The city insisted that it was the plaintiff's duty under the contract to clean the earth, gravel and rubbish out of the sewer (see p. 638); and it was the failure to remove this rubbish and gravel that was the breach complained of. The referee found that the plaintiff had substantially completed the work on time (p. 639), and the evidence showed that the city had full and complete use of the sewer during all the period of time (p. 640).

The following, from the opinion of Mr. Judge Woodruff in the case of Colwell v. Lawrence, 38 N. Y. 75, is applicable to the conditions in the McCann case: "Another view may also be invoked and I think is applicable to the present case, and that is, that there is sometimes plausible ground for withholding the doctrine of liquidated damages when the party might be responsible for the whole amount of damages for the breach of an unimportant part of a contract and so be made to pay a sum by way of damages grossly disproportionate to the injury sustained."

The learned judge in the McCann case, speaking for the

court, restated the undoubted rule that one will not be allowed to retain a substantial sum of money under the guise of liquidated damages, when, in fact, only nominal damages have been sustained.  No new rule of law was laid down in the McCann case, but recognized principles were applied to the facts in that case.  In all these cases it becomes largely a question of the burden of proof.  Damages are to be presumed from a breach.  See Little v. Banks, 85 N. Y. 265.  But in the McCann case this presumption was repelled.  See the same case, 11 App. Div. 380.

It seems to me that in this case the plaintiff has not overcome this presumption; but that the contrary appears — that the city sustained substantial damages.  The case of Willson v. Mayor of Baltimore, 83 Md. 203, cited by the learned counsel for the plaintiff, is also a case in which this presumption of damages was not only repelled but the contrary was conceded; and, also, in the Willson case, there was no provision allowing the city to retain the deposit of the bidder in case he failed to enter into the contract.

Quite a little has been said about the so-called equities of this case — that the city of Syracuse should not in equity exact from any one a sum of money when the city in fact has suffered no loss.  This assumes the very question at issue. But, apart from all this, the only method by which the officers and official bodies serving a municipal corporation can disburse its money is in accordance with law; and courts at least need have no anxiety about such restraint.

Judgment reversed, with costs.