### JOSEPH SCHOOLNICK *vs.* JOSEPH GOLD.

First Judicial District, Hartford, January Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Parties may agree in advance to pay a stipulated sum for a breach of their contract, and such a provision will be regarded and enforced as one for liquidated damages, provided, first, it appears that the parties so intended; second, that the situation was one in which the anticipated resultant damages would be uncertain in amount or difficult to prove; and third, that the sum agreed upon was reasonable, that is, not greatly disproportioned to the presumable loss or injury.

Schoolnick *v.* Gold.

The standard of measurement in cases of this character is not the plaintiff's actual loss or injury as shown by the event, but such as might reasonably have been anticipated by the parties themselves at the time their contract was made.

In the present case the defendant, who owned and carried on a butter and egg store on Main Street in Hartford, the gross receipts of which amounted to $10,000 or more a year, sold out his business to the plaintiff for $800, and agreed not to engage in that business within a prescribed distance on Main Street for a period of five years, "under the sum of $2,000 which is to be as liquidated damages." Within six weeks thereafter the defendant broke his agreement by opening and maintaining a store for the sale of butter and eggs almost directly opposite the plaintiff's place of business. *Held* that in view of the volume of business done, and of the period during which the plaintiff was entitled to be free from the defendant's competition in that locality, it certainly could not fairly be said that the sum of $2,000, agreed upon as liquidated damages, was unreasonable.

Provisions for the payment of a stipulated sum in the event of a breach of a party's promise not to engage in a particular business or profession in a given locality, have generally been construed by the courts as agreements for liquidated damages; and a contrary conclusion has been reached only where it was manifest either that the stipulated sum was unreasonable, or that the parties intended to fix a penalty. This disposition of the courts to leave the matter to the decision and agreement of the parties, is the logical result of the uncertainties and well-nigh insurmountable difficulties encountered in an effort to estimate damages in cases of this character.

Argued January 5th—decided February 23d, 1915.

ACTION to recover $2,000 as liquidated damages for the defendant's breach of his agreement not to engage in the sale of butter and eggs within a prescribed section of the city of Hartford, brought to and tried by the City Court of Hartford, *Bullard, J.;* facts found and judgment rendered for the plaintiff for nominal damages only, from which he appealed. *Error and judgment for $2,000 ordered.*

On January 3d, 1910, the defendant, being the owner and conductor of a butter and egg store located on Main Street in the city of Hartford, and carried on

under the name of the Connecticut Egg Company, sold the business, together with its stock and fixtures and the right to the use of the name "C. E. C. Creamery," to the plaintiff and another, to whose rights the plaintiff shortly succeeded, for the consideration of $800 paid. The agreement of sale was reduced to writing. One of its provisions was that the sale was conditioned upon the gross receipts of the business being at least $200 weekly, as determined for a test period of two weeks, and that, in the event of this condition not being satisfied, the purchase price should be returned, and the sale annulled. The receipts for the two weeks proved to be in excess of the sum named, and the sale was perfected.

By another provision the defendant agreed "not to engage in the sale of butter and eggs at retail, either for myself or as agent or employee, on Main Street between State Street to Trumbull Street, Hartford, for a period of five years from this date, under the sum of $2,000 which is to be as liquidated damages."

February 14th, 1910, the defendant broke his agreement by opening a store for the wholesale and retail sale of butter and eggs almost directly across the street from the plaintiff's place of business, and thereafter continued to carry on such business until after the bringing of this action.

After a hearing the court held that the stipulation for liquidated damages in the agreement was one for a penalty, and, the plaintiff failing to present proof of actual damages suffered which the court regarded as sufficient, rendered judgment that the plaintiff recover nominal damages only.

In its finding the court states its conclusion respecting the legal character of the provision for the $2,000 payment, as follows: "That an allowance of $2,000 as

damages, a sum two and one-half times greater than the amount paid for the defendant's business as a going concern and for a breach that had continued, at the time of suit, but a small fraction of the five-year limit, would be clearly disproportionate to the actual damages accruing from the breach and savor .of extortion."

*Joseph L. Barbour,* for the appellant (plaintiff).

*Joseph Gilbert Calhoun,* for the appellee (defendant).

PRENTICE, C. J.   The considerations to be observed, and tests to be applied, in determining whether the provision in this contract touching the $2,000 payment should be regarded and enforced as one for liquidated damages, or treated as a nonenforceable penalty, have been under review in two recent cases. *Dean* v. *Connecticut Tobacco Corporation,* 88 Conn. 619, 92 Atl. 408; *Banta* v. *Stamford Motor Co.,* 89 Conn. 51, 92 Atl. 665.   In these cases the subject was so fully discussed, and our conclusions so fully stated, that it is unnecessary to repeat what was then said in affirming and elaborating previous utterances of this court, beyond recalling the governing principles laid. down.   In the case last named, we stated the law, as established by repeated decisions, to be that a provision in a contract for the payment of a stipulated sum will be regarded and enforced, in the event of its breach, as one for liquidated damages, when three conditions co-exist, to wit: (1) that the damages to be anticipated as resulting from the breach are uncertain in amount or difficult to prove; (2) that there was an intent on the part of the parties to liquidate them in advance; and (3) that the amount stipulated was a reasonable one, that is to say, not greatly disproportionate to the presum-

able loss or injury. *Banta* v. *Stamford Motor Co.*, 89 Conn. 51, 92 Atl. 665.

In the present case the first of these conditions was satisfied in a pre-eminent degree. It would be difficult to conceive of a situation which would present greater uncertainty and difficulty, in the way of both the ascertainment of the extent of the damage resulting from a breach of contract and of its measurement in dollars and cents, than that covered by this agreement.

The parties expressed their intention to liquidate the anticipated damage too distinctly to leave a doubt upon that subject.

Was the amount agreed upon unreasonable? The trial court held that it was. But it is manifest, upon reference to that part of the finding which states the court's conclusions, that it misconceived the nature of the tests to be applied. It there appears that the question of the reasonableness of the stipulated sum was passed upon in its relation to damages actually suffered and shown, and that, even in that view, the court confined its consideration to the four months already elapsed of the five-year period, unmindful that the stipulated sum had its basis in an agreement for such a period of noncompetition.

In *Banta* v. *Stamford Motor Co.*, 89 Conn. 51, 92 Atl. 665, we said that the standard of measurement in these cases is not furnished by the plaintiff's actual loss or injury as the event may prove, but by the loss or injury which might be reasonably anticipated at the time the contract is made, or, in other words, the "presumable loss"; and added that it is the look forward and not backward that the courts are called upon to take in such cases, and that a party, in order to support the validity of such stipulation, is under no obligation to show actual damage suffered substantially

commensurate with the amount fixed. In determining whether or not the agreed amount is a reasonable one, the court is to put itself in the place of the parties at the time of the execution of the agreement and, looking forward, attempt to discover what loss they might reasonably have anticipated in view of the conditions presented.

Making application of this principle to the agreement before us, we find that the purchase and sale of the business was made upon the basis of one from which the weekly receipts were at least $200. That means annual gross sales of $10,000, or $50,000 for five years, if the business should not be increased. The plaintiff was looking forward to five years of this business free from the defendant's competition, and the defendant was encouraging him to do so. It was no mean business, and a damage of approximately $400 a year to it, and to its increase from the defendant's competition in its neighborhood, might well be anticipated.

It is true, as the trial court observed, that the amount paid for the business was not large, and doubtless the value of the stock and fixtures did not amount to any considerable figure. Its truer measure, however, is to be found in the volume of its receipts. That which the plaintiff was protecting himself against, and which the defendant covenanted to protect him against, was the defendant's competition with the productive business purchased, with its possibilities of continuance, growth and expansion. The agreement looked to a freedom from that competition for a period of five years. It certainly cannot fairly be said that the parties might not reasonably have measured the value of that protection, and the presumable loss from its withdrawal, at the figure incorporated in the instrument of sale.

Where contracts not to engage in some particular business or profession in a particular locality have pro-

vided for the payment of a stipulated sum in case of breach, the courts have generally construed them as liquidated damages, and have taken the contrary position only where it was manifest either that the stipulated sum was unreasonable, or that the parties had intended to fix a penalty. *Holbrook* v. *Tobey*, 66 Me. 410, 413; *Barry* v. *Harris*, 49 Vt. 392, 399; *Jaquith* v. *Hudson*, 5 Mich. 123, 140; *Stafford* v. *Shortreed*, 62 Iowa, 524, 526, 17 N. W. 756; 1 Sutherland on Damages (3d Ed.) § 290; 1 Sedgwick on Damages (9th Ed.) § 418.

This disposition to leave the matter, under such conditions, to the decision and agreement of the parties, save in instances of clear abuse, finds its logical justification in the well-nigh insurmountable difficulties in the way of estimating in advance, or of ascertaining afterward, the damages to be suffered or suffered by reason of a breach. These difficulties inhere in the situation created by such breaches, and render it impracticable, on the one hand, to determine in the ordinary case what a reasonable advance arrangement would be, and, on the other, to do justice to the parties apart from such arrangement. The chief significance of these cases, in so far as the one at bar is concerned, lies in their lesson of extreme caution in holding unreasonable a provision in which the parties have undertaken to fix in advance the damages recoverable in case of breach of a covenant not to engage in competitive business or professional activity, without something more definite and decisive to act upon than here appears.

The defendant voluntarily entered into the agreement. He speedily broke it, and thereby destroyed the purchaser's prospects held out in the terms of sale. He is not in a position to command sympathy, and we fail to discover a substantial foundation for his plea that he

be relieved from the obligation he in terms took upon himself, upon the ground of its unreasonableness.

There is error, the judgment is set aside and the cause remanded for the rendition of a judgment for the plaintiff in the sum of $2,000.

In this opinion the other judges concurred.